UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER L.,

          Plaintiff,

     v.                                       **DECISION AND ORDER**
                                                                20-CV-960S

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

        1.        Plaintiff Christopher L.[1] challenges the determination of an Administrative Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled since December 31, 2016 (amended onset date), due to back and mental conditions. Plaintiff maintains that he is entitled to benefits because his impairments render him unable to work.

        2.        Plaintiff filed an application for supplemental security income on June 4, 2017.[2] After denial at the agency level, Plaintiff proceeded to a hearing, which took place via videoconference before ALJ William Weir on September 6, 2019. At the time of the hearing, Plaintiff was 34 years old, with at least a high school education, and had past relevant work as lumber handler, pipe yard laborer, and metal scrapper. The ALJ considered the case *de novo* and, on October 2, 2019, issued a written decision denying

---

[1] In accordance with this district's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order identifies the plaintiff by first name and last initial only.

[2] Plaintiff also filed for disability benefits on this same date, but the ALJ dismissed his application on *res judicata* grounds due to a previous determination covering the relevant time period. (R. at 16-17.) Because Plaintiff does not challenge that determination in this appeal, this Court addresses only the adjudication of Plaintiff's application for supplemental security income.

Plaintiff's application for benefits. The Appeals Council thereafter denied Plaintiff's request for review on June 2, 2020.

3. Plaintiff filed the current action on July 27, 2020, challenging the Commissioner's final decision.[3] After filing of the administrative record, the parties cross-moved for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure, with briefing concluded on October 7, 2021. (Docket Nos. 10, 12-14.) The case was thereafter assigned here on October 14, 2021, at which time this Court took the motions under advisement without oral argument. (Docket No. 15.) For the following reasons, Plaintiff's motion will be denied, and Defendant's motion will be granted.

4. A party is entitled to judgment on the pleadings under Rule 12 (c) "only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted). In social security appeals, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 1383 (c)(3).

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § 1383 (c)(3); Wagner v. Sec'y of Health & Hum. Servs., 906 F.2d 856, 860 (2d Cir. 1990). Instead, the court's inquiry is limited to two issues: (1) whether the Commissioner applied the correct legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. See Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see also Norman v.

---

[3] The ALJ's October 2, 2019 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). In conducting this inquiry, the court cannot substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Hum. Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). Consequently, if the Commissioner's determination is free from legal error and supported by substantial evidence, the court must affirm. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

6. As it relates to the legal-error inquiry, the court must determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotations and citations omitted). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citation omitted). This inquiry is completed first because "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

7. As it relates to the substantial-evidence inquiry, the standard is not high. See Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

3

The United States Supreme Court defines substantial evidence as only "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and has clarified that "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154 (quoting Consol. Edison Co. v. NLRB, 305 U.S 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).  Because the Commissioner's factual findings are conclusive if supported by substantial evidence, see 42 U.S.C. § 1383 (c)(3), review is properly focused on whether substantial evidence supports the Commissioner's determination, not whether substantial evidence might also support the plaintiff's position.  See Zacharopoulos v. Saul, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021) (noting that "the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision*'") (quoting Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original)).  This is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citing Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999)).

8.      "To determine on appeal whether [the Commissioner's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's factual findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent

analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). Similarly, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). In short, the substantial-evidence standard requires that once an ALJ finds facts, those facts can be rejected "'only if a reasonable factfinder would *have to conclude otherwise*.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)).

9. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. § 416.920. The Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

10. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

11. The claimant has the burden of proof on the first four steps; the Commissioner has the burden of proof on the fifth step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The fifth step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 1383 (c)(1)(A); 20 C.F.R. § 416.920 (a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

12. In this case, the ALJ found the following with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset date (December 31, 2016[4]) (R. at 19[5]); (2) Plaintiff's major depressive disorder, unspecified impulse control disorder, and asthma are severe impairments within the meaning of the Act (R. at 19-20); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 20-22); (4) Plaintiff retained the residual

---

[4] Several times in the decision the ALJ misidentifies the year in the operative onset date, which is the amended onset date of December 31, 2016. See, e.g., R. at 19 (misidentifying alleged onset date as December 31, 2015); R. at 29 (same). It is clear from the text of the decision, however, that the ALJ correctly understood the alleged onset date to be the amended onset date—December 31, 2016. See R. at 17 ("[W]ith respect to the claimant's Title XVI application, this decision addresses the issue of disability beginning December 31, 2016, the amended alleged onset date."). In any event, Plaintiff does not claim any reversible error arising from these several misidentifications.

[5] Citations to the underlying administrative record are designated as "R."

functional capacity ("RFC") to perform a full range of work at all exertional levels, but with certain non-exertional limitations[6] (R. at 22-28); and (5) Plaintiff could not perform his past relevant work (lumber handler; pipe yard laborer; metal scrapper) but could perform jobs that exist in significant number in the national economy, including sorter and general helper (R. at 28, 29). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act through October 2, 2019. (R. at 17, 29.)

13. Plaintiff lodges two challenges to the ALJ's decision. First, he argues that the ALJ erred by not finding his back condition to be a severe impairment and by not including any corresponding limitations in his RFC. Second, Plaintiff maintains that the ALJ's finding that he is capable of occasional contact with co-workers and supervisors is not supported by substantial evidence. In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence and free from legal error and should therefore be affirmed.

14. Plaintiff first maintains that the ALJ erred by failing to recognize his back condition as a severe impairment at Step 2 of the analysis. "[T]he threshold for establishing a severe impairment at step two is extremely low and an ALJ should only deem an impairment non-severe if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work." Monroe v. Berryhill, No. 17 Civ. 3373, 2018 WL 3912255, at *22 (S.D.N.Y. July 24, 2018). In essence, Step 2 is a threshold test "designed to screen out *de minimis* or

---

[6] The non-exertional limitations consist of the following: "can perform work involving simple repetitive one and two step tasks, the claimant cannot perform complex work defined as multiple simultaneous goals or objectives or the need to independently set quantity, quality or method standards; the claimant may have only one change per day in general work task or setting; the claimant can have no public contact and only occasional co[-]worker and supervisory contact; and the claimant can have no exposure to extreme pulmonary irritants, dust, fumes and gases." (R. at 22-23.)

totally groundless claims." Melendez v. Comm'r of Soc. Sec., 17-CV-299-FPG, 2020 WL 4274510, at *2 (W.D.N.Y. July 24, 2020) (citations omitted).

15. Here, the ALJ noted at Step 2 that there was some evidence that Plaintiff had a chronic back condition, including reference to a "crush injury." (R. at 19.) Nonetheless, in examining the entire record, the ALJ found Plaintiff's back condition to be non-severe because (1) imaging of Plaintiff's back had been negative, (2) Plaintiff did not seek or engage in regular treatment for his back, and (3) diagnostic testing regularly returned unremarkable findings, such as normal gait, 5/5 strength, normal or mildly limited range of motion, and no focal motor or sensory deficits. (R. at 19-20.)

16. In challenging the ALJ's conclusion, Plaintiff concedes that a good deal of the evidence concerning his back condition pre-dates his amended onset date. He also does not challenge the ALJ's findings or the evidence cited in support thereof, but rather, argues that other notations in the record support his claim to have a "chronic struggle" with his back. But whether the record also contains remarkable findings is not the issue; the issue is whether substantial evidence supports the ALJ's decision. See Bonet ex rel. T.B., 523 F. App'x at 59.

17. In concluding that the record contained relatively normal findings, the ALJ recognized a mix of evidence in the record, but ultimately determined that the weight of the evidence supported a finding that Plaintiff's back condition did not significantly limit his physical capacity to perform basic work activities. (R. at 20.) Plaintiff does not argue that the evidence the ALJ relied on is faulty or non-existent; he simply argues that the ALJ should have credited other evidence that he views as favorable to his claim. Acceptance of this argument would invite a prohibited reweighing of the evidence and impermissibly

subrogate the ALJ's role in weighing and resolving conflicting evidence in the record. See Krull v. Colvin, 669 F. App'x 31, 32 (2d Cir. 2016) (noting that the deferential standard of review prohibits a reweighing of the evidence); see also Richardson, 402 U.S. at 399 (finding that it is the ALJ's task to weigh and resolve conflicting evidence in the record). While Plaintiff undoubtedly would have preferred a weighing of the evidence in his favor, the ALJ adequately explained his consideration of the evidence concerning his back condition, and his Step 2 conclusions are supported by substantial evidence. See Bonet ex rel. T.B., 523 F. App'x at 59 (noting that the issue on review is whether substantial evidence supports the ALJ's decision, not whether it supports Plaintiff's position).

18. As a corollary to this argument, Plaintiff maintains that even assuming that his back condition was non-severe, the ALJ nonetheless erred by not considering and accounting for it in formulating his RFC. An ALJ is required to "consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity" to establish disability. See Melendez, 2020 WL 4274510, at *3 (citing 20 C.F.R. §§ 404.1523, 416.923).

19. Here, the ALJ did in fact consider Plaintiff's non-severe limitations at the RFC stage. (R. at 20 ("Although I have determined that some of the claimant's physical impairments are non-severe within the meaning of the regulations, the limiting effects of all the claimant's impairments, even those that are not severe, were considered in determining the claimant's residual capacity assessed below."). The ALJ's RFC discussion reflects consideration of both Plaintiff's mental and physical impairments, including his alleged back condition. (R. at 22-28.) That the ALJ failed to include exertional limitations in Plaintiff's RFC is a function of the scarcity of evidence supporting

such limitations, not a failure of the ALJ to consider them.  See, e.g., Cheryl S. v. Saul, 20-CV-378L, 2021 WL 1893474, at *2 (W.D.N.Y. May 11, 2021) (denying remand where record evidence failed to indicate that non-severe impairments caused any particular exertional limitations).

20. Plaintiff's second argument is that the ALJ's determination that he could have only occasional contact with co-workers and supervisors is not supported by substantial evidence because it conflicts with the ALJ's finding that he must have no contact with the public.  (R. at 22-23.)  But Plaintiff concedes that there is substantial evidence in the record from Drs. Ippolito and Lieber-Diaz supporting the ALJ's conclusion that he had moderate to marked limitations in his ability to interact adequately with supervisors, co-workers, and the public, yet points to no evidence requiring no contact with co-workers and supervisors.  (R. at 113, 117, 546.)  While Plaintiff faults the ALJ for failing to explain why he included different "contact" limitations, there is no basis to remand where the limitation at issue is *more* restrictive than that found in the medical opinions.  See Castle v. Colvin, No. 1:15-cv-113-MAT, 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) ("[T]he fact that the ALJ's RFC assessment did not perfectly match [a medical] opinion, and was in fact more restrictive than that opinion, is not grounds for remand"); see also Lesanti v. Comm'r Soc. Sec., 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) (finding that affording a claimant the benefit of the doubt by including a more restrictive limitation in the RFC is not grounds for remand).  Such is the case here, where the limitation of no contact with the public is *more* restrictive than the opinions set forth by Drs. Ippolito and Lieber-Diaz.  As such, remand is not warranted.

21. Accordingly, having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds that it is free from legal error and supported by substantial evidence. It is therefore affirmed. See Grey, 721 F.2d at 46; Marcus, 615 F.2d at 27. Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   March 8, 2022
         Buffalo, New York

                                                    s/William M. Skretny
                                                   WILLIAM M. SKRETNY
                                                  United States District Judge